The commissioner's report exhibits two views of the account directed to be taken in this case: If the plaintiffs be entitled to the moiety of the effects of John Charteris, which was bequeathed to his sister, Ann Charteris, the commissioner finds the amount due them to be $7,208.15; but if the plaintiffs be not entitled to that moiety, then he reports the amount due to be $5,798.37. The question of law presented by the report arises upon the following facts: John Charteris bequeathed all his property to his two sisters, Ann Charteris and Jane McDonald, with an express limitation that if either of them should die without a child or children living at her death, "the whole should survive to the surviving sister, her heirs and assigns." Ann Charteris died without having been married, but there was living, at her death, the *Page 388 
plaintiff Sarah, who was born to her out of lawful wedlock, long before the execution of John Charteris's will, and who was recognized by the said Ann and by her friends as the child of the said Ann, and in whose favor the deed of settlement was made of all the property of the said Ann, which has been established in this cause. It is insisted on the part of the plaintiff that the said Ann did, in the sense of this will, leave a child living at her death, and that therefore the limitation over to Jane McDonald did not take effect. The Court has no difficulty in pronouncing that, according to the legal construction of the will, Ann Charteris died without leaving a child or children living at her death, and that the limitation to the defendant Jane did take effect. This is not the case of a bequest of the children of the testator's sisters — much less to their children then in existence. It is a prospective disposition in favor of the surviving sister, upon the contingency that the other should not leave the child or children behind her. Now, without deciding upon the effect of a bequest explicitly made to the children which a woman may have, whether legitimate or natural, or upon the (480) effect of a limitation in case a woman should not leave living at her death any child, whether legitimate or natural, it is enough to say, upon the present occasion, that it is perfectly clear that the word "children" per se imports in law legitimate children, and that none but legitimate children can be understood as embraced therein, unless, upon the instrument to be construed, it manifestly appears that natural children were thereby intended. (See Wilkinson v. Adams, 1 Ves. B., 422.) Nor is this legal import of the term "children" at all altered by the acts of our Legislature which permit, where a woman dies intestate and without legitimate children, "those commonly called illegitimate or natural children" to succeed to the property of their mother. They are not thereby made, in law, the children of their reputed mother, but enabled to take her property where there are none such, under the description of persons "commonly called illegitimate or natural children." The Court, therefore, sets aside the account taken by the commissioner upon the basis that the plaintiffs are entitled to the moiety of the effects of John Charteris, bequeathed to his sister Ann.
Exceptions have been taken by the plaintiffs to the other account. The first exception is for that the commissioner hath allowed a commission of 5 per centum to the executrix of Ronald McDonald, when, according to law, no commission should be allowed. So far as this exception extends to the allowance of any commission, it is not well founded, for it is one not allowed to the defendant Jane personally, but to her testator, and is not forfeited, as alleged on the part of the plaintiffs, by the unconscientious resistance she has made to their just claims. But the rate of commission is manifestly unreasonable. The whole *Page 389 
estate of Ann Charteris with which the late R. McDonald is charged consists of three sums of money — two received from Mr. Morehead, the administrator of John Lenox, and the other received from Mr. Town, a professional gentleman of Virginia, being the said Ann's third part of the net amount of collections there made for John Lenox's representatives; and there were no disbursements. The moneys thus received simply remained in his hands until his death. The ground upon which the commissioner allowed this rate of commission was that an order had been obtained in the county court of Rockingham, by (481) the defendants, since the reference of the accounts, fixing 5 per cent as a proper commission. Whatever respect this Court might feel itself bound to pay to such an order, had it been made before this suit was instituted, it regards an order in relation to a matter under investigation here as furnishing no criterion by which to regulate the proper allowance. The commissioner should have reported what he deemed a reasonable commission, and if there was ground to expect that any investigation to be made by him could change the view in which the subject of commissions is now presented, we should recommit the report for his revisal. But thinking it unnecessary to delay the final decision of the cause for the mere form of such recommitment, we allow the exception for the excess over 1 1/2 per centum, credited as a commission to Ronald McDonald, and overrule it as to the residue.
The remaining exception of the plaintiffs is for that the master in the said account hath not charged the estate of Ronald McDonald for the interest or profits on a moiety of the estate of John Charteris up to 1830, when Ann Charteris died. In strictness, there is ground for this exception. Until the death of Ann Charteris, the estate of John Charteris belonged beneficially to the said Ann and Jane McDonald, equally; and, therefore, although upon the death of Ann Charteris her moiety of the estate survived to the said Jane, yet her moiety of the profits did not pass therewith. But the Court will not recommit the report because of this exception. It is admitted that the claim was not advanced before the commissioner, and not thought of until after the report was made. It does not appear that there was, in fact, any profit on the estate between 1827 and 1830, and it is certain that if there was any, the moiety of the plaintiffs therein must have been very inconsiderable; for the whole estate, with the accumulation of interest thereon, for three years after the death of Ann Charteris, that is to say, in November, 1833, appears to have been but $1,032.
The report, according to the second view presented by it, is to be corrected by deducting the excess of commissions allowed to Ronald McDonald, and, after that correction, is confirmed. The commissioner *Page 390 
is allowed $25 for taking the accounts, to be included in the taxation of costs, and the plaintiffs will have a decree for the amount due (482) them, and also a decree for their costs against Jane McDonald.
PER CURIAM. Decree accordingly.
Cited: Clark v. Edney, 28 N.C. 53; Burch v. Clark, 32 N.C. 173; Carter v. Jones, 40 N.C. 200; Kirkpatrick v. Rogers, 41 N.C. 136; Mulline v. McCandless, 57 N.C. 428; Howell v. Tyler, 91 N.C. 211; Egerton v. Carr, 94 N.C. 652; Sullivan v. Parker, 113 N.C. 303; Love v. Love, 179 N.C. 118.
 *Page 11